# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 13-598V
Filed: January 23, 2017

| | |
|---|---|
| * * * * * * * * * * * * * <br> ERIC P. CABRERA *and* CAROL <br> CABRERA *natural parents and guardians* <br> *of* L.C., *a minor*, <br> <br> Petitioners, <br> <br> v. <br> <br> SECRETARY OF HEALTH <br> AND HUMAN SERVICES, <br> <br> Respondent. <br> * * * * * * * * * * * * * | UNPUBLISHED <br><br><br><br> Special Master Gowen <br><br> Attorneys' Fees and Costs |

Ronald C. Homer, Conway, Homer, P.C., for petitioners.
Darryl R. Wishard, United States Department of Justice, Washington, DC, for respondent.

**DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]**

     On August 21, 2013, Eric and Carol Cabrera ("petitioners") filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Act" or the "Program"),[2] 42 U.S.C. § 300aa-10 et seq. (2012), on behalf of their minor child, L.C. Petitioners alleged that as a result of receiving a diphtheria-tetanus-acellular pertussis ("DTaP") vaccine on August 30, 2010, L.C. developed juvenile idiopathic arthritis ("JIA"). Petition at ¶ 3-4.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Petitioners were represented by Thomas P. Gallagher until June 17, 2015, when Ronald C. Homer, of Conway, Homer & Chin-Caplan ("CHCC"), was substituted as counsel. Interim attorneys' fees and costs were awarded to Mr. Gallagher prior to his withdrawal. See Decision, dated June 3, 2015. Sylvia Chin-Caplan was the primary attorney handling this case for CHCC, but she recently left CHCC to practice on her own. Petitioners filed a second motion for interim attorneys' fees and costs for CHCC on January 10, 2017. See Petitioner's Motion for Interim Attorney's Fees and Costs ("Pet. Mot."), filed Jan. 10, 2017. On January 13, 2017, petitioners filed a motion to substitute Sylvia Chin-Caplan, of the Law Office of Sylvia Chin-Caplan, in place of CHCC.

Petitioners request $108,383.50 in attorneys' fees for CHCC, $2,162.60 in attorneys' costs for CHCC, $6,000.00 in attorneys' costs for Mr. Gallagher, and $2,611.46 in petitioners' costs, for a total interim fees and costs request of $119,157.56. Pet. Mot. at 1. Respondent filed a response to petitioners' application on January 11, 2017. Respondent states that she "defers to the Special Master to determine whether or not petitioners have met the legal standard for an interim fees and costs award," and that "[s]hould the Special Master conclude that an interim award of attorneys' fees and costs is appropriate, respondent respectfully requests that the special master exercise his discretion and determine a reasonable award." Respondent's Response at 2-4.

## I. Interim Attorneys' Fees and Costs

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1). Interim attorneys' fees and costs are permissible under the Vaccine Act. See Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008); see also Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010). In this case, respondent states that she "defers to the Special Master to determine whether or not petitioners have met the legal standard for an interim fees and costs award," but is otherwise satisfied that the statutory requirements for an award of attorneys' fees and costs are met. Resp. Response at 2.

Ronald C. Homer, of CHCC was substituted as counsel in place of Thomas Gallagher on June 17, 2015. A status conference was held July 15, 2015, with Sylvia Chin-Caplan appearing on behalf of CHCC. An entitlement hearing was held November 19, 2015. Petitioners filed a post-hearing brief on February 24, 2016, and respondent filed a post-hearing brief on April 12, 2016. Petitioners filed a response to respondent's post-hearing brief on May 18, 2016. A Ruling on Entitlement finding petitioners entitled to compensation was issued January 12, 2017. A damages order was issued January 17, 2017, setting a schedule for the parties to discuss damages resolution. A joint status report regarding whether the parties plan to file life care plans is due February 16, 2017.

In Avera, the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In Shaw, the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. Several cases have also

2

recognized the withdrawal of counsel as a circumstance under which an award of interim fees may be appropriate. See, e.g. Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (the special master may consider whether the attorney has withdrawn or been discharged as a factor pertinent to awarding interim fees, particularly where there may be an indefinite delay until the matter is ultimately resolved); Woods v. Sec'y of Health & Human Servs., No. 10-377V, 105 Fed. Cl. 148, 154 (2012) ("The Special Master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of 'circumstances' to warrant an interim fee award."); Bear v. Sec'y of Health & Human Servs., No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) ("the fact that counsel is withdrawing *can be one* important factor, supporting an interim award"); Smirniotis v. Sec'y of Health & Human Servs., No. 14-617V, 2016 WL 859057, at *2 (Fed. Cl. Spec. Mstr. Feb. 12, 2016) ("paying attorneys when their service is complete is appropriate").

The undersigned finds an award of interim attorneys' fees and costs appropriate at this time. In this case, the parties are just beginning the damages resolution phase. While this is the final substantive phase of the case, it could take a considerable length of time to resolve, especially given that L.C. is a child with a lifelong condition that will likely require continuing treatment. If a life care plan is needed, the process could be drawn out while the parties coordinate a life care planning visit and wait for the life care planners to write reports. CHCC has expended substantial time on this matter, and the firm has now ended its representation of petitioners. The undersigned finds an award of interim fees at this time appropriate in order to resolve CHCC's involvement with the case given the firm's withdrawal and the fact that the case may not be ultimately resolved for some time.

   a. **Reasonable Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y or Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of

3

Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### i. Hourly Rates

Petitioners request the following hourly rates for 2015 through 2016:

Christina Ciampolillo: $300
Sylvia Chin-Caplan: $400
Meredith Daniels: $280
Lauren Faga: $265
Ronald Homer: $400
Joseph Pepper: $290
Law Clerks: $145
Paralegals: $135

See generally Pet. Mot., Tab A. The issue of reasonable 2014-2015 forum rates for the Conway, Homer & Chin-Caplan firm was recently ruled upon by the undersigned in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The requested rates are consistent with the rates awarded in McCulloch, and the undersigned finds them reasonable. See McCulloch, 2015 WL 5634323, at *21.

### ii. Hours Expended

Petitioners request compensation for 18.30 hours of work performed by Ms. Ciampolillo, 7.00 hours by Mr. Pepper, 96.30 hours by Ms. Faga, .40 hours by Ms. Daniels, 2.70 by Mr. Homer, 147.90 hours by Ms. Chin-Caplan (5.70 of which were appropriately billed at half rate for travel), 1.30 hours by law clerks, and 118.10 hours by paralegals. Pet. Mot., Tab A, at 53.

On review of the billing record, the undersigned finds the hours expended reasonable. Because multiple attorneys billed hours on this case, the undersigned reviewed counsel's time sheets carefully for evidence of duplication. In particular, the undersigned examined the time spent by the four CHCC associates—Ms. Ciampolillo, Mr. Pepper, Ms. Faga, and Ms. Daniels. It appears that Mr. Pepper was the primary associate handling this case when CHCC first substituted as counsel. Pet. Mot., Tab A, at 1-8 (Mr. Pepper's billing entries from 6/15/2015 to 7/22/2015). The billing record indicates that Ms. Faga then took over as primary associate in late July 2015. Id. at 9 (Ms. Faga billed an hour on 7/27/2015 for "review[ing] file for case status following transfer from JP"). The paralegal time throughout the case was spent largely on tasks such as obtaining and summarizing medical records, and preparing and filing exhibits. See generally id. Mr. Pepper and Ms. Faga, on the other hand, primarily drafted documents and assisted Ms. Chin-Caplan with other attorney tasks throughout the course of the litigation. Id. The division of time between attorneys and paralegals therefore appears reasonable and non-duplicative. Id. With regard to the other associate work, the bulk of the time Ms. Ciampolillo billed was for editing and cite-checking the pre and post-hearing submissions. See, e.g. Pet. App., Tab A at 24, 26, 45, 48 (2.00 hours edit/cite check the prehearing memo on 9/24/2015;

4

3.00 hours edit/cite check pre-hearing memo & joint submission on 9/25/2015; 4.00 hours to review/edit post-hearing brief, discuss with LF on 2/22/2016; 3.40 hours to edit post-hearing reply, conf with LF on 5/18/2016). While Ms. Ciampolillo's time may be reaching the upper limit of reasonable editing time, the undersigned finds it reasonable in this case. Finally, Ms. Daniels' time, which was spent editing two documents, was minimal and reasonable. See Pet. App., Tab A, at 3, 22. Accordingly, the undersigned does not find that the work performed on this case was duplicative or otherwise unreasonable, and the requested hours will be compensated.

   b. Costs

Petitioners request a total of $2,162.60 in attorneys' costs for CHCC. Pet. Mot. at 1; See generally, Pet. Mot., Tab B. The requested costs consist primarily of medical record fees, Fed Ex costs, and costs related to travel for the entitlement hearing. Pet. Mot., Tab A, at 51-53; See generally Pet. App., Tab B. The undersigned finds CHCC's requested costs reasonable.

Petitioners request $6,000.00 in costs for Thomas Gallagher, former counsel in the case. Pet. Mot. at 1. This amount consists of Dr. Brawer's costs for travel to and fees for attending the November 19, 2015, entitlement hearing. Pet. Mot., Tab B, at 1. The documentation supporting this $6,000 was somewhat unclear. Petitioners submitted a handwritten note from Dr. Brawer, dated December 6, 2016, and titled "Expenses for Nov. 19, 2015, Court Hearing in Washington, D.C." Pet. App., Tab B, at 1. This note indicates that Dr. Brawer billed $2,800 for travel time (7 hours at $400 per hour) and $3,200 for the time spent at hearing (8 hours at $400 per hour), for a total of $6,000 related to the hearing. Id. The $6,000 is marked as having been paid in full by the referring attorney (Mr. Gallagher). Id. Following Dr. Brawer's note are three checks from Mr. Gallagher to Dr. Brawer for $1,000, $2,500, and $2,500, dated January 29, 2015, March 12, 2015, and September 2, 2015, respectively. Id. at 2-4. Petitioners did not submit the original invoice from Dr. Brawer to Mr. Gallagher, so it is unclear how the breakdown of the $6,000 described in Dr. Brawer's December 2016 note corresponds to the three checks he received from Mr. Gallagher, which were issued prior to the hearing. Nevertheless, this $6,000 is the only amount requested for Dr. Brawer in connection with the hearing, the undersigned notes that the hearing did take 8 hours, and the 7 total hours requested for travel to and from the hearing appears reasonable given Dr. Brawer's office is located in Long Branch, New Jersey. The undersigned finds Mr. Gallagher's requested costs reasonable.

Petitioners request $2,611.46 in petitioners' costs. Pet. Mot. at 1; See generally Pet. Mot., Tab C. The requested costs consist of $1,179.66 in travel expenses to meet Dr. Brawer in 2014,[3] $905.75 in travel expenses for the entitlement hearing, and $22.68 in UPS costs related to submitting their expenses. See generally, Pet. Mot., Tab D. The requested costs include $503.37 in mileage for petitioners' 2014 travel to meet Dr. Brawer. Pet. Mot., Tab D at 2 (requesting 2,142 miles at 23.5 cents per mile). However, petitioners have also requested compensation for $245.74 in gas purchased during this trip and $302.37 for the cost of replacing a flat tire due to

---

[3] Petitioners were not awarded interim costs in the previous interim fee award of June 3, 2015. See Decision, filed June 3, 2015.

pothole damage on their way home. Id. at 1-2, 5. Compensation of mileage based on a set dollar amount per mile generally represents average gas prices and average vehicle wear and tear, and is used in lieu of compensating the actual documented cost of gas. In this case, however, petitioners submitted receipts documenting their actual gas costs in addition to requesting compensation for mileage. The undersigned will award petitioners the requested $503.37 in compensation for mileage, which takes into account the cost of gas and vehicle wear and tear, but will not also compensate the $245.74 in actual gas costs. In addition, replacing a flat tire does not seem to be an appropriate expense to charge to the Program even if the flat tire did occur enroute to or from the hearing. This is more of an automobile maintenance cost and not a transportation expense. Accordingly, the undersigned will not award petitioners the $302.37 requested for replacing their flat tire.

## II. Conclusion

Upon review of the documentation of the requested attorneys' fees and costs, and based on his experience with the Vaccine Act and its attorneys, the undersigned finds a fee and costs award of $118,609.45 reasonable.

The undersigned awards attorneys' fees and costs as follows:

   **(1) A lump sum of $110,546.10 in the form of a check payable jointly to petitioners and petitioners' former counsel, Ronald C. Homer, of Conway, Homer, P.C., for attorneys' fees and costs.**

   **(2) A lump sum of $6,000.00 in the form of a check payable to petitioners' former counsel, Thomas P. Gallagher, for attorneys' fees and costs.**

   **(3) A lump sum of $2,063.35 in the form of a check payable to petitioners for petitioners' costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment forthwith.[4]

   **IT IS SO ORDERED.**

> s/Thomas L. Gowen
> Thomas L. Gowen
> Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.